## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MICHAEL GUTWEIN,

    Plaintiff,

v.                                                                       No. 1:15-CV-00672 RB-WPL

TAOS COUNTY DETENTION CENTER ("TCDC"),
and TAOS COUNTY,

    Defendants.[1]

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Taos County Adult Detention Center ("TCADC") and Taos County's Motion for Summary Judgment No. 1 (Doc. 39). Having reviewed the briefing and being fully advised, the Court will **grant** Defendants' Motion.

### I.   PROCEDURAL POSTURE

Plaintiff Michael Gutwein was incarcerated at TCADC, a facility operated by Taos County, between July 27 and September 14, 2013. Doc. 1 at 3; Doc. 39, ex. 40. Acting through counsel, Gutwein sued the County and TCADC under 42 U.S.C. § 1983, alleging deprivation of his constitutional rights while he was incarcerated. *See generally* Doc. 1.

Plaintiff initiated suit in this Court on August 3, 2015. Doc. 1. On August 16, 2016, Defendants TCADC and Taos County moved for summary judgment Plaintiff's § 1983 claim. Doc. 39. Plaintiff did not file a timely response to the motion.[2]

---

[1] This caption has been modified to reflect the dismissal of claims against former Defendants Healthcare Partners Foundation and Joe Sprunk. *See* Docs. 16, 25.

[2] Plaintiff initially filed a deficient and inapplicable response on August 30, 2016. Doc. 45. Thereafter, Plaintiff moved to amend/correct the record and amend his response to the motions for summary judgment, which the Court allowed on November 28, 2016. *See* Docs. 58, 89. However, Plaintiff subsequently failed to comply with the extended response deadline and the Court issued an order striking Plaintiff's untimely responses. Doc. 104.

## II.  DEFENDANTS' UNCONTESTED FACTUAL ALLEGATIONS

Where a Plaintiff fails to provide an adequate response brief, the facts as described by Defendants in their motion are accepted as true for purposes of summary judgment. *See Coleman v. Blue Cross Blue Shield of Kan., Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008); *see also Herrera v. Santa Fe Pub. Sch.*, 956 F. Supp. 2d 1191, 1194 (D. N.M. 2013) (quoting D.N.M.LR–Civ. 56.1(b) ("[a]ll material facts set forth in the Response will be deemed undisputed unless specifically controverted."). Accordingly, the Court accepts Defendants' assertions of undisputed facts contained in their motion (Doc. 39). These facts are reproduced below:

1. Defendant Taos County is the public entity responsible for the Taos County Adult Detention Facility.

2. Healthcare Partners Foundation ("HCP") provided all of the medical care for the inmates of TCADC during the time Plaintiff was incarcerated in 2013, pursuant to its contract with the County.

3. Plaintiff Gutwein was incarcerated in TCADC on July 27, 2013.

4. Plaintiff was seen by HCP personnel to have his medical intake completed on July 27, 2013.

5. During the medical intake, Plaintiff denied having any current injuries.

6. Plaintiff did not have any body deformities and had good range of motion.

7. Plaintiff denied being depressed or having anxiety.

8. Plaintiff stated that he takes Clonodine 0.1mg, Morphine 15mg, Diazepam 5mg for muscle pain and hypertension. He stated he had been diagnosed with hypertension.

9. Plaintiff did not mention any shoulder pain and had no complaints during the intake.

10. Plaintiff was referred and transported by HCP to Holy Cross Hospital for a dislocated right shoulder on Sunday, July 28, 2013.

11. At Holy Cross Hospital, Plaintiff was seen by Dr. Michael Howard. In his medical notes, Dr. Howard stated Plaintiff's symptoms as "shoulder dislocation…pt. dislocates it purposely to relieve pain – now can't get back in."

12. Plaintiff gave Dr. Howard permission to do a closed reduction.

13. In the Orthopedic Reduction notes within the Holy Cross Records, Dr. Howard noted "pt self dislocated and reduced here."

14. Dr. Howard then provided a shoulder exam, the reason for exam noted as "dislocated, patient self reduced."

15. Under history, the exam was noted as a "postreduction evaluation."

16. All medical records from Holy Cross Hospital indicate that Plaintiff dislocated his own shoulder, and then put it back into place himself with the help of Dr. Howard.

17. The patient instructions instructed Plaintiff to "follow up with your primary healthcare provider or bone specialist in 5 to 10 days."

18. Dr. Howard prescribed 1 tablet of Ibuprofen every 6 hours.

19. Plaintiff was also given a sling.

20. On Tuesday, July 30, 2013, Plaintiff submitted a medical request asking to continue his medications that he brought in, and to have his vital signs checked because he felt that his blood pressure was high.

21. Plaintiff also complained of withdrawal from opiates and having headaches.

22. Plaintiff was seen in the clinic and advised that the facility is non-narcotic and does not give out controlled substances.

23. Plaintiff's vital signs were taken and were within normal limits.

24. Three days after visiting Holy Cross Hospital, on Wednesday, July 31, 2013, Plaintiff requested to see an orthopedic doctor for his shoulder. He was already scheduled to see his HCP primary care physician, Dr. Campos, over Telemedicine that same day.

25. It was noted that during Plaintiff's medical intake he had no complaints, did not mention a shoulder injury, and showed no signs of pain.

26. During the Telemedicine appointment, Plaintiff showed slight signs of pain and good range of motion.

27. On August 7, 2013, Plaintiff submitted a medical request asking to be weighed and requesting to see an orthopedic doctor.

28. Plaintiff also submitted a request for a sleep aid as well as the medication Phenergan for his stomach.

29. Plaintiff was placed on Phenergan for fourteen days per Dr. Campos' orders, he was scheduled for a 24-hour observation sleep study, and he was scheduled to be seen by Dr. Campos over Telemedicine on August 8,2013.

30. Plaintiff had a twenty-four hour sleep study done on August 7, 2013.

31. On August 8, 2013, Plaintiff was seen over Telemedicine by Dr. Campos.

32. Plaintiff went into the HCP clinic not showing much pain and was able to get up and sit down without any struggle and showed that he had good range of motion.

33. Dr. Campos explained that Plaintiff did not need to see an orthopedist at this time due to the results he saw over Telemedicine. Plaintiff was then placed on Vistaril 25mg twice per day (BID) for fourteen days and once that dose ended, Vistaril 25mg every evening (QPM) for twenty (20) days for anxiety and to help him relax and sleep.

34. On August 10, 2013, Dr. Campos requested the x-ray and medical records from Plaintiff's hospital visit to Holy Cross Hospital. Dr. Campos also told Plaintiff that he would not be required to see an orthopedist until his records were reviewed.

35. Also on August 10, 2013, Plaintiff put in a medical request asking for a follow up appointment with an orthopedist and that he did not want to see the provider over Telemedicine. Plaintiff was educated that if he has concerns about his shoulder, he had the option to follow up over Telemedicine with Dr. Campos on August 12, 2013.

36. On August 13, 2013, Plaintiff's medical records were received from the hospital and were faxed to Dr. Campos.

37. On August 14, 2013, Plaintiff put in two medical requests asking for a muscle relaxer such as Flexeril, a sleep aid such as Lunesta or Ambien, a Phenergan prescription, and also requested to see an orthopedic doctor.

38. On August 15, 2013, Plaintiff was advised that Dr. Campos did not feel that an orthopedic doctor was needed at this time due to the records received by Dr. Campos on August 13, 2013.

39. Plaintiff was told he could have another follow-up with Dr. Campos over Telemedicine during the next clinic date, during which time Plaintiff could follow up with Dr. Campos for continuation of Phenergan.

40. Plaintiff complained of not being able to sleep and again requested muscle relaxers and Flexeril. An appointment with Dr. Campos over Telemedicine was scheduled for the following Monday, August 19, 2013.

41. A sleep study was conducted the night of August 17, 2013.

42. Plaintiff was noted to have been awake from midnight until 5:00 a.m. on August 18, 2013.

43. On August 19, 2013 Plaintiff put in a medical request stating he could not sleep and that he wanted to see an orthopedist.

44. Plaintiff was seen over Telemedicine by Dr. Campos for the shoulder pain and sleeping problems.

45. Plaintiff stated that his shoulder really hurt during the night time.

46. Dr. Campos prescribed Plaintiff Tramadol 50mg twice per day (BID) for ten days and then Tramadol 50mg every day (QD) for ten days to treat the pain.

47. The treatment plan was discussed and Plaintiff stated he would try the Tramadol.

48. However, that same day Plaintiff refused to take the Tramadol during the evening medication line because he stated that he wanted muscle relaxers instead.

49. Plaintiff signed a Treatment and Medication Refusal Form which contained a waiver. The waiver stated:

> I make this refusal with a full understanding that the refusal to accept medical treatment and or medication may lead to further complications or may aggravate the condition in which I presently have or may cause other medical conditions to develop. Further, I understand that during the course of treatment a Medical Provider may discover other medical conditions, which also require treatment and or medication, and that these conditions may also go untreated. I have had the opportunity to discuss with the Medical Provider my medical condition and the proposed treatment and or medication. I hereby waive, release and agree to hold harmless the County of Taos and all elected officials, officers and employees, including but not limited to the Board of County Commissioners and the Taos County Detention Facility, from any and all claims of liabilities of any and all type whatsoever, whether known or unknown to me at this time, relating to any and all medical conditions which I may have or may have acquired while in the Taos County Detention Facility or which may result or may later occur as a result of my refusal to accept medical treatment and/or medication.

50. On August 20, 2013, Plaintiff refused Tramadol during both medicinal lines and stated he wanted a muscle relaxer and that he did not like the Tramadol.

51. On August 21, 2013, Plaintiff requested a muscle relaxer and also to be seen by an orthopedist. Plaintiff was scheduled to be seen over Telemedicine for the next day.

52. On August 22, 2013, Plaintiff was seen over Telemedicine by Dr. Campos who once again determined that Plaintiff did not need to see an orthopedic doctor at that time.

53. Dr. Campos also told Plaintiff that he could follow up with an orthopedist when he was released or that he could request a medical furlough through the courts.

54. Plaintiff's Tramadol prescription was discontinued and Dr. Campos prescribed Flexeril 10mg twice per day (BID) for ten days, and then Flexeril 10mg every evening (QPM) for an additional ten days. Dr. Campos also continued Plaintiff's Vistaril.

55. On August 23, 2013, Plaintiff once again requested a muscle relaxer and to see an orthopedist.

56. He was reminded that Dr. Campos stated he does not need to see an orthopedist at this time.

57. Medical staff also noted that Plaintiff was on Flexeril.

58. Also on August 23, 2013, Plaintiff requested medication to help him sleep.

59. Dr. Kevin McClintock put in a request for a sleep study to be completed. The results of the sleep study would then be submitted to the on-call provider.

60. Twenty-nine (29) days after being booked into TCADC, Plaintiff stated he had foot pain and that he needed the orthotics from the inside of the shoes he wore in when he was booked into TCADC.

61. The medical staff discussed the request with the Major on duty, and the Major stated that Plaintiff could possibly have the orthotics if they were approved by security.

62. On August 26, 2013, Plaintiff requested a sleep aid, to see an orthopedist, and complained of foot pain.

63. On August 28, 2013, Plaintiff again requested a sleep aid and complained of foot pain.

64. Dr. Kevin McClintock prescribed Plaintiff Icy Hot Muscle Rub for his foot pain.

65. On August 29, 2013, Plaintiff requested medication to help him sleep and to see an orthopedist.

66. The previously-ordered sleep study did not generate results so another one was ordered.

67. Plaintiff was again advised that he did not need to see an orthopedist at this time and that he could request a medical furlough or see a specialist once he was released.

68. Dr. Campos prescribed Ambien for Plaintiff in order to assist with his sleeping problems.

69. On August 31, 2013, Plaintiff put in a medical request stating that he could not sleep. Since he had recently been placed on Ambien, no further action was needed at that time.

70. On September 4, 2013, Plaintiff requested to stay on Vistaril and to see an orthopedist.

71. Plaintiff was already on Vistaril and had been ordered to continue taking it through September 22, 2013.

72. Plaintiff was advised that he could see an orthopedist if he requested medical furlough or when he was released.

73. On September 7, 2013, Plaintiff requested medication for "horrible muscle pain that is causing headaches."

74. Dr. McClintock prescribed Ibuprofen (IBU) for ten days in addition to his prescription for Flexeril.

75. Plaintiff was also advised to do neck and back stretching exercises to relieve muscle tension that could be causing the headaches.

76. Plaintiff agreed to the medical treatment plan as discussed.

77. Overall, Plaintiff saw Dr. Campos over Telemedicine four times [UMF 25, 31, 44, 52], he received treatment from a doctor indirectly an additional five times [UMF 29, 58, 63, 67, 74, 75] and visited the Healthcare Partners Foundation (HCP) clinic twenty (20) times in total during his fifty (50)-day stay [UMF 4, 22, 24, 29, 31, 34, 38, 40, 44, 51, 52, 55, 58, 60, 62, 64, 66, 69, 72, 74, 75].

78. Plaintiff was prescribed the following medication during his incarceration at TCADC: Vistaril for anxiety [UMF 33], Phenergan for stomach problems [UMF 29], Tramadol for pain [UMF 46], Flexeril for pain [UMF 54], Icy Hot Muscle Rub for foot pain [UMF 64], and Ambien for sleep [UMF 68].

79. Plaintiff was released from TCADC on September 14, 2013.

80. HCP was dismissed from this case on January 8, 2016.

81. Defendant Joe Sprunk was dismissed from this case on April 26, 2016.

### III.   MOTION FOR SUMMARY JUDGMENT

Defendants assert that they are entitled to summary judgment as to Plaintiff's § 1983 claim. Specifically, they contend that Plaintiff fails to satisfy the two prongs of the deliberate indifference test, as Plaintiff's injury was not sufficiently serious to satisfy the objective component and that defendants did not intentionally disregard an excessive risk to Plaintiff's safety, as required for the subjective prong. *See* Doc. 39.

#### A. Legal Standard for Summary Judgment

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] 'that there is an absence of evidence to support the nonmoving party's case.'" *Bacchus Indus., Inc. v. Arvin*

*Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation marks omitted)).  Once the movant meets this burden, the non-moving party is required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324.

The Court's role is not to weigh the evidence or determine credibility, but rather merely to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. *See Anderson*, 477 U.S. at 249, 255.  "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor."  *Id.* at 257.  Further, the Court must resolve reasonable inferences and doubts in favor of the non-moving party, and construe evidence in the light most favorable to the non-moving party.  *See Hunt v. Cromartie*, 526 U.S. 541, 551–54 (1999).  However, "viewing the evidence in the light most favorable to the nonmovant, it is not enough that the evidence be merely colorable or anything short of significantly probative."  *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir. 1991) (internal quotations omitted); *See also Anaya v. CBS Broad. Inc.*, 626 F. Supp. 2d 1158, 1197 (D.N.M. 2009) ("The mere existence of a scintilla of evidence will not avoid summary judgment.").

### B.  <u>Analysis of Plaintiff's Cruel and Unusual Punishment Claims</u>

Under the Eighth Amendment of the United States Constitution, a detention center is required to provide a detainee with humane conditions of confinement by ensuring the basic necessities of adequate food, clothing, shelter, and medical care, and by taking reasonable measures to guarantee his safety.  *Farmer v. Brennan*, 511 U.S. 825 (1994); *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1188 (10th Cir. 2003). "Although the Due Process Clause governs

a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly,* 164 F.3d 490, 495 (10th Cir. 1998). The Supreme Court has instructed that detention conditions may be "restrictive and even harsh" without violating constitutional rights. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). Indeed, "only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). In addition, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, care, and sanitation may violate constitutional requirements despite a shorter duration. *See DeSpain v. Uphoff,* 264 F.3d 965, 973 (10th Cir. 2001) (citations and internal quotation marks omitted).

### 1. *Municipal Liability of Taos County*

Unlike a state government, a municipality is not entitled to sovereign immunity and is considered a "person" for purposes of a § 1983 suit. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). However, as correctly noted by Defendants, a municipality cannot be held vicariously liable under § 1983 merely because of the acts of its agents. *Monell*, 436 U.S. at 691. Rather, a municipality is liable only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* Accordingly, in order to establish a recoverable § 1983 claim against a municipal entity, a plaintiff must demonstrate that the deprivation of his rights was the result of an official policy or custom. *Id.* at 90-91; *see also Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) ("A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that

a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation.").

Under this standard, evidence in the record and Defendants' un-rebutted statement of facts does not reveal a material dispute precluding summary judgment. Plaintiff has failed to provide any evidence supporting his contention that the County intentionally implemented policies and procedures to save money by denying transportation of inmates in need of serious medical care. *See* Doc. 1 at 3. Indeed, this assertion is contradicted by the fact that Plaintiff was himself transported to an outside hospital for medical care following the dislocation of his shoulder. Doc. 39, ex. 5. Additionally, evidence in the record does not establish that the County implemented policies to deny inmates appropriate medical care. On the contrary, the County contracted the services of HCP for the very purpose of providing such medical care to inmates at TCADC. *See* Doc. 39, ex. 1-2. Pursuant to this agreement, Plaintiff was provided access to a primary care physician multiple times via teleconference and was prescribed various medications to alleviate his ailments, foreclosing the possibility of a policy or entity-wide custom to deprive inmates of such rights. *See* Doc. 39, ex. 12, 14, 17, 26, 31, 36, 37. Similarly, there is no evidence in the record indicating a policy or custom to deny inmates access to orthopedic or other specialists. Rather, the County denied Plaintiff's requests to see an orthopedist based on the recommendation of Dr. Campos, Plaintiff's primary care physician, who made an individualized assessment that such care was not required in Plaintiff's case. *See* Doc. 39, ex. 17, 18, 23, 31. As such, even presuming wrongdoings on the part of individual HCP Physicians, no material dispute supported by evidence in the record establishes that an official policy or custom promulgated by Defendant Taos County was the cause or moving force behind the deprivation of Plaintiff's constitutional rights.

For these reasons, the Court concludes that the County is entitled to summary judgment on the theory of municipal liability.

### 2. *Deliberate Indifference by TCADC Officials*

A claim for inadequate medical attention will be successful if the plaintiff demonstrates "deliberate indifference to a prisoner's serious medical needs." *Estate v. Hocker v. Walsh,* 22 F.3d 995, 998 (10th Cir. 1995) (internal quotations omitted). The test for deliberate indifference requires both that: 1) the plaintiff's medical needs were "sufficiently serious" when viewed objectively; and 2) that viewed subjectively, the official acted with a culpable state of mind in that he or she knew the prisoner had a serious medical need and intentionally refused to provide the prisoner with medical care or intentionally interfered with the prisoner's treatment. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

The objective prong of the deliberate indifference test is satisfied if the "harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause" of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious when the prisoner is "diagnosed by a physician as mandating treatment" or when the need "is so obvious that even a lay person can easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The subjective prong is met if the prisoner has shown "that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." This state-of-mind element requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, Plaintiff claims that TCADC provided inadequate medical care by denying him access to an orthopedist, thereby delaying necessary surgical intervention. Doc. 1 at 4. In support of his contention that TCADC deliberately disregarded an obvious and substantial risk to his health, Plaintiff contends that the failure to provide access to an orthopedist contradicted the recommendation of Dr. Howard, his treating physician at Holy Cross Hospital. *Id*. It does appear that Dr. Howard suggested that Plaintiff make a follow-up appointment with out of town physician Benjamin Ward. *See* Doc. 39, ex. 10. However, evidence in the record clarifies that Dr. Howard warned Plaintiff that he may need a referral from his primary care provider prior to making an appointment and alternatively instructed that he "follow up with your primary healthcare provider or bone specialist in 5 to 10 days." *Id*. Three days after his visit to the hospital, TCADC provided Plaintiff access to Dr. Campos, his primary care physician, via teleconference technology. Doc. 39, ex. 12. Following several telemedicine appointments and review of his medical records, Dr. Campos determined that access to an orthopedic specialist was not required in Plaintiff's case, and Defendant TCADC relied on this determination in denying Plaintiff's requests to see an orthopedist. *See* Doc. 39, ex. 17, 18, 23, 31.

It is important to note that the fact that a plaintiff disagreed with the diagnosis or course of treatment by the medical staff does not establish a constitutional deprivation. *See Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). Case law in the Tenth Circuit has specifically held that where an inmate is receiving treatment from a primary care physician, denial of access to a specialist does not establish deliberate indifference under the Eighth Amendment unless it would be obvious to a layperson that the inmate's condition required a specialist's attention. *See Franklin v. Kan. Dep't of Corr.*, 160 F. App'x 730, 735 (10th Cir. 2005); *Bruce v. Wilson*, No. 13-CV-0491-WJM-CBS, 2013 WL 5890793, at *7 (D. Colo. Nov.

4, 2013). Here, Plaintiff may be correct in asserting that access to an orthopedic specialist would have been the most prudent course of action. However, TCADC has established that it relied on the recommendations of Dr. Campos, whose determination on the necessity of a specialist is a medical judgment not subject to second-guessing in a constitutional inquiry. *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992); s*ee also Estelle v. Gamble*, 429 U.S. 97, 105-6 (1976) (holding that even claims establishing gross negligence or medical malpractice are insufficient to demonstrate an Eighth Amendment violation).

Plaintiff's remaining assertions of inadequate medical care stem from a failure to provide him with previously prescribed medication for pain and sleep as well as an orthotic from his shoes which enabled him to walk. Doc. 1 at 4. However, un-rebutted evidence shows that he was prescribed with alternative treatments for his ailments, including: Vistaril for anxiety, Phenergan for stomach problems, Tramadol for pain, Flexeril for pain, Icy Hot Muscle Rub for foot pain, and Ambien for sleep. *See* Doc. 39, ex. 14, 26, 31, 36, 37. Further, even assuming, *arguendo*, that Plaintiff could show the greater effectiveness of his previously prescribed medications and orthotic, he has provided no evidence that any resulting harm was sufficiently serious to satisfy the objective prong of the deliberate indifference test. *See Farmer*, 511 U.S. at 834. A delay or interruption in treatment is sufficiently serious only if it results in a permanent lifelong handicap or considerable physical suffering. *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); s*ee also Grant v. Bernalillo Cnty. Detention Ctr.*, 173 F.3d 863, 1999 WL 157415 at *2 (10th Cir. 1999) (holding that prison officials may be liable under the Eighth Amendment for delay in treatment which results in permanent handicap where it is apparent that delay would exacerbate prisoner's medical problems). While Plaintiff did complain of pain and sleep problems, uncontested evidence shows that he refused to take his prescribed pain medication, undercutting

any argument that the pain was intolerable. *See* Doc. 39, ex. 28-29. Thus, the evidence does not demonstrate harm rising to a level cognizable as a constitutional violation. *See Sealock*, 218 F.3d at 1210 (holding that pain experience must be substantial to invoke Eighth Amendment protections and that "not every twinge of pain suffered as a result of delay in medical care is actionable").

For these reasons, there remain no material factual disputes which would allow Plaintiff to recover under a theory of deliberate indifference.

### IV.   CONCLUSION

For the foregoing reasons, the Court finds that Defendants are entitled to summary judgment on Plaintiff's 42 U.S.C. Section 1983 claims.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. 39) is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**